## LANE *v.* LUTZ.

September, 1864.

Where, in an action in the nature of a creditor's bill, brought to set aside a transfer of property as fraudulent, the court appointed a receiver, and directed the property to be sold subject to such incumbrances as were on it when the transfer was made,—*Held*, that an unfiled chattel mortgage, held by one not a party to the action, was a lien on the proceeds of the sale, as against the judgment creditor.

And where, in such proceedings, the judgment creditor made an agreement with the mortgagee, by which the mortgagee allowed the property to be sold free from all incumbrances, on condition that his mortgage should be first paid out of the proceeds,—*Held*, that the judgment creditor was afterwards estopped from objecting to the mortgage on the ground that it was not filed, even though he was ignorant of the defect at the time of the agreement.

*It seems*, that a court of equity will not order a receiver to sell property without first giving a hearing to persons claiming title.

Maltby G. Lane, as assignee of a judgment against Lutz, Doll & Germann, brought this action, in the supreme court, in the nature of a creditor's bill, against Lutz, Doll & Germann, and one Lambrecht and one Brewer.

One Moore, the original owner of the Manhattanville stage line and the real and personal property employed in it, sold the line and property in 1852 to the firm of Lutz, Doll & Germann, and took from them a chattel mortgage on the personal property, to secure part of the price. The next year, part of the mortgage debt having been meanwhile paid, he took a new chattel mortgage for the balance. This mortgage he assigned to one Husson, who duly filed it. A year afterward, in February, 1854, further payment having been meanwhile made, Husson took from Lutz, Doll & Germann, a new mortgage for the balance (six thousand two hundred dollars), but did not then file it.

Lutz, Doll & Germann, in May, 1854, sold the stage line and property to one Lambrecht, taking his promissory notes for the price, and then assigned the notes and some other assets to one Brewer, in trust for certain creditors. The sale to Lambrecht was by its terms expressed to be subject to a chattel mortgage

on the personal property, of about four thousand dollars or five thousand dollars, referring to the mortgage held by Husson.

In 1853 and 1854, Lutz, Doll & Germann had become in-debted to the firm of David Lane & Co., and on August 17, 1854, confessed judgment to them for their indebtedness, in the sum of three thousand seven hundred and twenty-seven dollars and thirty-eight cents. The judgment creditors issued execution, which was returned unsatisfied, and afterward assigned their judgment to Maltby G. Lane.

In October, 1854, Maltby G. Lane brought this action, to have the sale and assignment declared void, and the assigned property applied to payment of the judgment he held; and he obtained the usual injunction. He did not make Husson a party, nor allege in his complaint anything impeaching Husson's mortgage. After the commencement of the action, but before the trial, Husson filed his chattel mortgage.

At the trial the judge decided that the sale and assignment were constructively fraudulent and void, and that a receiver must "be appointed to sell the whole property, subject to the same incumbrances to which it was liable when Lambrecht took it." There were other incumbrances beside the Husson mortgage, but they need not be more particularly noticed.

Plaintiff did not attempt to have the direction as to the sale modified, but had a receiver appointed and advertised a sale. The advertisement stated that "if sold together, the present property will be subject to two chattel mortgages, but if sold in parcels it will be free from incumbrances." Husson's mortgage was one of these.

Afterward, on the day of the sale (the plaintiff, Husson, and other parties interested, being present), an attempt was made to sell in bulk, but no bids being made, the property was sold in parcels, in pursuance of an agreement between the plaintiff and Husson that the mortgage of the latter should be first paid from the proceeds of the sale. In disregard of the agreement, however, the receiver brought the whole proceeds into court. On October 23, 1855, a reference was ordered, and the referee was directed, among other things, to ascertain what liens existed on the proceeds of the sale. A copy of the order

was directed to be served on Husson, who now first appeared as a party to the litigation. On November 1, 1856, the referee submitted his report, in which he allowed Husson's mortgage as a lien on the proceeds of the sale.

He, however, refused to charge his commissions, &c., for the sale on Husson's share of the proceeds.

*The supreme court*, at special term (MITCHELL, J.), confirmed the report of the referee on the main question, holding that, although the statute (2 *R. S.* 136), declared an unfiled chattel mortgage to be void as against creditors, yet the creditor might waive that right, and so act as to be estopped from denying its validity; that in this case, the creditor's act would not estop him, since it was not proved that he was aware that the mortgage was unfiled; and that, if the plaintiff had caused the property to be sold under his execution, the court could have given Husson no relief. Since, however, the plaintiff had chosen the remedy in the nature of a creditor's bill, the court had the undoubted right to appoint a receiver and take the property into its own hands, and grant relief according to its own ideas of the equity of the case.

That since the court ordered the receiver to sell the property subject to the liens which existed on it when Lambrecht took it, the claim of Husson must be allowed, inasmuch as the mortgage was a valid lien as long as the property remained in the hands of Lutz & Co. And that the terms of sale and the conversations between the parties, clearly showed, that they were all agreed that all the plaintiff was entitled to was the net proceeds after the payment of the incumbrances, including Husson's mortgage.

But as to the claim for commissions, the court held, that as the receiver appeared to have acted both for the plaintiff and the mortgagee, the share of the latter was chargeable with commissions and expenses.

The judgment accordingly entered on the referee's report was affirmed by the court at general term, and the plaintiff now appealed to this court.

*Solomon L. Hull*, for plaintiff, appellant;—Insisted that plaintiff acquired a specific lien, by his suit and injunction

(Corning v. White, 2 *Paige*, 367; Fitch v. Smith, 10 *Id.* 9; Edmiston v. Lyle, 1 *Id.* 637; Utica Ins. Co. v. Power, 3 *Id.* 365; Strong v. Skinner, 4 *Barb.* 546; Dwight v. Newell, 3 *N. Y.* 185), which entitled him to avoid an unfiled chattel mortgage. Thompson v. Blanchard, 4 *N. Y.* 303; Smith v. Acker, 23 *Wend.* 653; Benedict v. Smith, 10 *Paige*, 126; Hicks v. Williams, 17 *Barb.* 523. Plaintiff was not estopped by an admission *of law*, Brewster v. Striker, 2 *N. Y.* 19, 41. The consent was no consideration for a promise to pay out of the proceeds. Silvernail v. Cole, 12 *Barb.* 687; Van Alsten v. Wimple, *Comst.* 162; Gould v. Armstrong, 2 *Hall*, 579. Acting under a misapprehension is not an estoppel. Jewitt v. Miller, 10 *N. Y.* 402; Plumb v. Ins. Co., 18 *N. Y.* 392.

*Marshall S. Bidwell*, for respondent Husson;—Insisted that the right to payment of the chattel mortgage was *res adjudicata*. Doty v. Brown, 4 *N. Y.* 71; Castle v. Noyes, 14 *Id.* 329. Plaintiff acquired no lien by his creditor's suit, &c., as against Husson. Peck v. Burdett, 1 *Paige*, 305; Edmiston v. Lyle, 1 *Id.* 637; Ellingwood v. Stevenson, 4 *Sandf. Ch.* 366; Hill v. Beebee, 13 *N. Y.* 556; Mattison v. Baucus, 1 *N. Y.* 295. Plaintiff "must do equity." 2 *Abb. Dig.* 105, pl. 954. He was not like a *bona fide* purchaser. Horton v. Davis, 26 *N. Y.* 495.

WRIGHT, J.—The appeal is by the plaintiff from so much of the judgment as declares Husson to be entitled, as the holder of a chattel mortgage upon the property, to be paid out of the fund arising from a sale of such property under the order of the court. The action was by the plaintiff, a judgment creditor of the defendants Lutz, Doll and Germann, to set aside what was claimed to be a fraudulent transfer of the property by them to the defendant Lambrecht, and to have the same sold, and the proceeds applied to the payment of his judgment. Husson, who held a chattel mortgage on it, for a part of the purchase money (the existence of which mortgage the assignors of the plaintiff had knowledge of, before obtaining a confession of the judgment), was not made a party. The court decided the sale and assignment to Lambrecht to be void, and instead of simply setting aside the conveyance, and allowing the plain-

Lane *v.* Lutz.

tiff to issue a new execution, directed a receiver to be appointed to sell the property, subject to the same incumbrances to which it was liable when transferred to Lambrecht. This was the only direction that could rightly have been given. At the time Lambrecht took the property, it was subject to Husson's mortgage, which had been given to Lutz, Doll and Germann, for an unpaid portion of the purchase money. Husson not being a party, his rights could not be affected by any proceeding in the suit; and the court, having set aside the fraudulent conveyance to Lambrecht, and taken the property into its own hands, could not equitably make any other disposition of the case. The only question involved was as to what passed to Lambrecht by the conveyance from Lutz & Co., which was adjudged to be void; and this was, the property which Lutz & Co. held, subject to the Husson mortgage. This mortgage was a valid lien as against them when the conveyance was made to Lambrecht; and the plaintiff, while admitting this, did not make Husson a party to the suit, or suggest that his mortgage was invalid, or ask any relief, other than the pretended transfer to Lambrecht might be set aside. All that the receiver could rightly take under the order, or could sell, was the property, subject to Husson's mortgage. The court might have directed the mere title of Lutz, Doll and German to be sold, without giving Husson an opportunity to be heard; but in an equitable proceeding no court orders a receiver to sell the thing itself, without giving a party claiming title to it, a hearing. The plaintiff acquiesced in the decision appointing a receiver to make sale of the property itself, subject to the incumbrance to which it was liable, when transferred to Lambrecht; making no attempt to alter or modify it, but consenting thereto. His attorney, subsequently, in concert with the receiver, prepared notices of the sale of the property, in which it was stated, that if sold in bulk, the sale would be subject to two chattel mortgages (Husson's mortgage being one of them), but if sold in parcels, the sale would be free from incumbrances; and afterward, and on the day of sale (the plaintiff, Husson, and other parties interested in the property, being present), an attempt was twice made to sell in bulk, but no bid being made, it was sold in parcels, and, as the evidence clearly shows, in

pursuance of an understanding and agreement between the plaintiff and Husson, that the mortgage of the latter should be first paid from the proceeds of the sale. · Having this agreement with the plaintiff, Husson permitted the sale to be made free from his mortgage, and the articles to be separated, expecting to be first paid; but, in disregard of the agreement, the entire proceeds were brought into court by the receiver. Subsequently a reference was ordered to examine the accounts of the receiver, and to take proof of, and pay liens, if any; a copy of the order and notice of the reference being directed to be served on Husson. At this point of time, Husson first appeared as a party to the litigation, and, very plainly, thus informally drawn in, if not on the plaintiff's own motion, at least by his consent. Up to this time, it seems, all the parties interested seem to have agreed, that it was the net proceeds of the property, after payment of all the incumbrances, including Husson's mortgage, that the plaintiff was entitled to under the decision and judgment of the court, and nothing more. It had been supposed that the whole property of the Manhattanville line would sell for a sufficient sum to meet the incumbrances and pay the plaintiff's judgment; and on this supposition the plaintiff acted, in concert with Husson, up to the time of the sale. In this there was a disappointment, the proceeds thereof being insufficient to meet the liens. Accordingly, on the reference, the plaintiff endeavored to avoid them entirely.

The objection urged before the referee against considering Husson's mortgage a lien upon the proceeds of the sale, was, that such mortgage was not filed at the time the plaintiff's action was commenced. I do not think the objection valid. It was not important, as affecting the rights of the parties, that the mortgage should have been on file when the suit was instituted. As the statute declares, in terms, that an unfiled chattel mortgage shall be void as against the creditors of the mortgagor, it is probable (although the mortgage in this case was but a continuance of a series of mortgages for the unpaid balances of the original purchase money for the property due from Lutz & Co., and the plaintiff had actual notice thereof), that had the plaintiff, on obtaining his judgment against the mortgagors, issued his execution and sold the property then in

the hands of Lambrecht, he could not have been held as a tres-
passer at the suit of Husson, the mortgagee.

But an essentially different course was pursued. Whilst the
mortgage was confessedly valid as against the mortgagors with-
out filing, and could have been made so at once as against
their creditors, an action to reach the equitable interest of the
mortgagees in the property was commenced. Lambrecht was,
at the time, in possession of the property as owner, by virtue
of a transfer from the mortgagors, and recognizing the Husson
mortgage as a valid lien, the only relief prayed for was to set
aside the transfer to Lambrecht. All that was attempted to be
reached, and indeed all that could be reached, was the interest
which Lutz, Doll & Germann had in the property in the hands
of Lambrecht; and this interest was their equity of redemp-
tion, or right to any surplus beyond the mortgage. To enable
the plaintiff to reach the interest of Lutz, Doll & Germann in
the property, it was sought to have the transfer to Lambrecht
set aside, which was a transfer subject to the mortgage. Pro-
curing this transfer to be set aside did not entitle the plaintiff
to reach an interest which Lutz, Doll & Germann never con-
veyed. As between Lutz & Co. and Husson, there is no pre-
tense that the mortgage can be impeached, and the court did
not, and equitably could not (Husson not being a party to the
suit) give the plaintiff greater rights than the extent of Lutz,
Doll & Germann's interest. This was all that was done, and
the plaintiff submitted to a judgment, limited to setting aside
the sale to Lambrecht, as to him, and directing, not a sale of
Lutz & Co.'s interest in the property, but a sale of the property
itself, subject to the same incumbrances to which it was liable
when transferred to Lambrecht. The judgment obtained by
the plaintiff, under such circumstances, does not entitle him to
payment of it in preference to Husson's mortgage. The lien
acquired by the filing of the complaint was not a specific lien
upon the property in question, but only on the equitable assets
of Lutz, Doll & Germann, in the hands of Lambrecht. It ex-
tended only to such estate as Lutz, Doll & Germann had in
the property, and to that extent and no further, the filing of
the complaint operated as an equitable attachment. It could not
affect the prior title to or lien of a person not made a party **to**

the action. The case would have been different had the plaintiff, after obtaining his judgment, issued an execution and levied upon the property itself. That would have been the case of a judgment creditor levying an execution upon specific property of his debtor, and raising the question affecting the title or right of a third person to or in the thing itself. There was, therefore, no lien acquired in this case upon the property by the filing of the complaint in October, 1854, and when the Husson mortgage was off the files in the register's office.

It was entirely immaterial in this equitable proceeding to reach the assets of Lutz, Doll & Germann, as affecting the rights of Husson, whether or not his mortgage was on file when the suit was commenced. The statute, it is true, declares that a chattel mortgage shall be absolutely void as against the creditors of the mortgagor when the property is left in his possession, unless filed. This does not mean creditors at large. The creditor must have attached the mortgaged property or acquired a lien on it in some legal way before the question can be raised. If he be a judgment creditor, as in this case, his execution must be levied. Here there was no levy. Lambrecht was, at the time the execution was returned unsatisfied, the owner of the chattels and in possession, subject to Husson's mortgage. By instituting an equitable proceeding to collect his debt the plaintiff acquired no lien, nor was he in a position of a creditor entitled to allege that Husson's mortgage, from not being filed when he commenced the proceeding, was absolutely void as against him.

If, however, he was in a situation to raise the question of the invalidity of Husson's mortgage as against him, on the ground that it was not filed in October, 1854, it is clear to my mind that a creditor, as in this case, with full notice of a prior mortgage, seeking to collect his debt out of specific property, by a proceeding in equity, stands in the same position as a subsequent purchaser or mortgagee. He takes only the equities of his debtor.

There is, however, another reason why the plaintiff is not entitled to have the proceeds of the sale applied in payment of his judgment in preference to Husson's mortgage. On the face of his complaint it had been shown that the transfer to Lam-

brecht was made subject to Husson's mortgage, the validity of which was nowhere questioned, Husson not being a party. The court must either have given a judgment simply setting aside the conveyance, or do, what it undoubtedly possessed the power of doing, set it aside and take the property and dispose of it equitably. Accordingly, a judgment was given declaring the conveyance to Lambrecht to be void, and ordering the appointment of a receiver to take and sell the property, subject to the incumbrances upon it at the time of the transfer—Husson's mortgage being the only lien. In this judgment the plaintiff acquiesced and has never appealed from it. If he had appealed he could not have altered it, as Husson, the mortgagor, was not a party. Husson's right to be paid his mortgage is, therefore, *res adjudicata.*

There is yet another reason for postponing the payment of the plaintiff's judgment to that of the mortgage of Husson. The order of the court was to sell the property, subject to the incumbrances, including this mortgage, and if Husson had not consented it could not have been sold in any other way. To have effected a sale of it, subject to incumbrances, would have required it to have been sold in bulk. Before the sale the plaintiff, Husson, and others interested, fixed a price at which it was to be sold in bulk, and if so sold it was agreed that the Husson mortgage was to remain; but if the sale was in parcels, and the property scattered, the mortgage was to be first paid from the proceeds of sales. An ineffectual attempt was made to sell in bulk, there being no bidders, when it was sold in parcels under this understanding and agreement. I think the plaintiff is estopped by the agreement from insisting that Husson's mortgage is not entitled to priority of payment out of the proceeds of the sale. To allow him, after the sale has taken place on the faith of the agreement, to repudiate it, and when Husson cannot be put in the same position he was in before the sale, would be unreasonable and unjust. It would enable the plaintiff to perpetrate a wrong and a fraud upon him. It is to be remembered that had Husson not consented, the sale must have been subject to his mortgage. It is immaterial whether the plaintiff knew that the mortgage had not been filed. There was no fraud on Husson's part, and the plaintiff

knew the law on the subject as much as if he had been expressly told what it was, and was bound to make inquiry or search if he thought it important. At all events, it was too late to object after Husson had allowed the sale to take place under the agreement, and could not be replaced in his former position.

The judgment should be affirmed.

HOGEBOOM, J.—The reasons rendered by the referee at the special term for the disposition of the case made in the court below appear to me to be cogent and conclusive, and I do not deem it necessary to enlarge upon them. I content myself with a brief reference to some of the propositions advanced by the counsel for the appellant.

1. It is said that the commencement of this action operated to confer upon the plaintiff a specific lien upon the property in question, and that the mortgage of Husson was entirely inoperative against the plaintiff because it was not filed.

It is not necessary to discuss either of these propositions, because the decision in favor of Husson is placed upon a ground entirely distinct and independent of these and consistent with the assumption that both of these prepositions may be entirely correct.

2. It is said that Husson's mortgage being thus entirely void he was not in any way prejudiced by the sale. But as to this, it must be observed: First, that Husson was not a party to the action, and has had no opportunity to set up by answer or fully to establish by proof what facts he might wish to present by way of obviating the necessity for filing his mortgage; second, Husson was undoubtedly prejudiced by the sale if it was not carried out in conformity with the stipulation to which he was a party, and on which he relied for the protection of his interests.

3. It is said that the alleged agreement, that Husson was to be paid out of the proceeds of the sale, was void as being without consideration, and being void could not operate as an estoppel against the plaintiff. First, this assumes what Husson has not had an opportunity fully to controvert, to wit, the invalidity of his mortgage. Second, the agreement was not with-

Lane *v.* Lutz.

out consideration. Husson at all events made a claim under his mortgage, and the claim was sufficiently plausible and colorable to operate as the foundation of a sufficient consideration to make some equitable arrangement in regard to it. The plaintiff had not treated it as invalid, nor made Husson a party to a suit to set it aside, and the court had expressly directed a sale subject to it. The bounden duty of the receiver was to conform to the order of the court, from which plaintiff had taken no appeal, and the latter was not therefore in a situation to attack the mortgage of Husson. But, apprehending that the mortgage of Husson might embarrass the sale and cause a sacrifice of the property if sold in parcels, the plaintff made an explicit arrangement with Husson, which the plaintiff expected to be advantageous to him, but which he now wishes to repudiate, that the property should be sold, discharged of the incumbrances which were to be paid out of the proceeds. I think the plaintiff is precluded from receding from his agreement by every consideration which enters into the idea of an equitable estoppel.

4. It is said that the plaintiff acted in igno :ance of the fact that the mortgage was not filed, and therefore should be bound by the course of proceeding to which he assented. First, it is probably true, though it does not appear to be expressly proved, that plaintiff was ignorant of the filing of the mortgage, but there is no pretense or proof that Husson fraudulently concealed that fact from him. The plaintiff had an opportunity and was bound to acquaint himself with the fact, and his neglect to do so was his own misfortune. He must be bound by his agreement if he was not inequitably surprised or fraudulently entrapped into it by Husson. Second, there is no certainty that he would not have made precisely the agreement he did if he had been aware of the non-filing of the mortgage. He does not say that he would not. He had instituted proceedings without making Husson a party, having entirely a different aspect, which disabled him from setting aside that mortgage without entirely revolutionizing the framework of his proceedings. The court had made an order upon the assumption that Husson's mortgage was to be paid. The plaintiff had practically adopted that order, and if he had then

ascertained for the first time the non-filing of the mortgage he might perhaps have very rationally concluded that it was better to go on and take his chances for ultimate compensation out of the proceeds of a sale subject to the mortgage, which he probably supposed would protect his debt as well as the mortgage, than to retrace his steps, pay the costs, begin anew, make Husson a party to the new proceedings, and charge the invalidity of the mortgage, with the chances of possible, if not probable discomfiture.

In every aspect which I have been able to consider the case I think the order of the court below was right, and should be affirmed.

A majority of the judges concurred.

Judgment affirmed, with costs.